(December 5, 1919.)

## JOHN SHULL, Respondent, v. ANDREW T. LAWRENCE and GEORGE H. LAWRENCE, Appellants.

[186 Pac. 246.]

VENDOR AND PURCHASER—OPTION CONTRACT—TENDER.

1. Where a vendor grants an option for the purchase of certain lands, the purchase price to be paid in instalments, and after giving the option the vendor encumbers the land with a mortgage and agrees with the holders of the option that the assumption of the mortgage indebtedness shall be considered a part payment of the purchase price of the land, without specifying in the agreement upon which of the instalments of the purchase price it shall be applied, the holders of the option, upon electing to purchase the property, may make application of the payment made by the assumption of the mortgage indebtedness upon such instalments of the purchase price as they may direct.

[As to rights of parties under optional contract for purchase of land where land is subject to encumbrance not provided for in contract, see note in Ann. Cas. 1913E, 923.]

2. A formal tender of performance by a purchaser is unnecessary, and an offer, together with readiness and ability on his part to perform, is sufficient where the obligations of the vendor and purchaser are mutual and concurrent, and the vendor refuses to perform his part of the contract except upon a condition which is repugnant to the terms thereof.

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. Robert M. Terrell, Presiding Judge.

Action for possession of real property. Judgment for plaintiff. *Reversed.*

Wm. A. Lee and Holden & Holden, for Appellants.

If respondent drew said option contract with the intention of having appellants understand by its terms that the money, which he was to receive from the Devereaux Mortgage Co., was to be applied as a first payment on the purchase

price of the land in question and it is capable of such construction, appellants are entitled to have it so construed, even though respondent intended that the language he employed should mean that said money was not to be applied on appellants' first payment. (Case note to *Inman Mfg. Co. v. American Cereal Co.* (Iowa), 8 L. R. A., N. S., 1140, and authorities cited; *Laidlaw v. Marye,* 133 Cal. 170, 65 Pac. 391; *Blankenship v. Decker,* 34 Mont. 292, 85 Pac. 1035; *Schroeder v. Nielson,* 39 Neb. 335, 57 N. W. 993; *People's Bldg. etc. Assn. v. Klauber,* 1 Neb. (Unof.) 676, 95 N. W. 1072; *Patterson v. Humboldt First Nat. Bank,* 78 Neb. 228, 110 N. W. 721; *Carlson & Hanson v. Holm,* 2 Neb. (Unof.) 38, 95 N. W. 1125; *Portland Iron Works v. Willett,* 49 Or. 245, 89 Pac. 421, 90 Pac. 1000.)

D. E. Rathbun and J. M. Stevens, for Respondent, cite no authorities.

RICE, J.—This is an action to obtain possession of real property. On May 17, 1915, respondent John Shull, by a contract in writing, granted to appellants, Andrew T. Lawrence and George H. Lawrence, an option to purchase the land in question, the right to purchase under the option to be exercised within one year from the date of the instrument. The option contained the following paragraphs:

"It is further understood and agreed that if all or any portion of the land are purchased under this option that the said John Shull will carry three-fourths of the average price per acre as a loan upon the said tract so purchased for one, two or three years to accommodate the said second party, and shall let and lease the said land for the present crop season under terms to be agreed upon and expressed therein in the lease drawn for the purpose. . . . .

"Second parties now being in possession of and cultivating the said lands, it is agreed that they shall continue the cultivation and raising of the said crop and enjoy the proceeds thereof providing, that said second parties shall give to said first party a crop mortgage to secure the payment of

the taxes and water assessments for the year 1915, which amount is to be represented by note due December 1, 1915.''

On Sept. 7, 1915, respondent being desirous of obtaining a loan upon the lands to be secured by a mortgage thereon, two agreements in writing were executed by respondent, appellants and the Devereaux Mortgage Company, an Oregon corporation, which recited the existence of the option above referred to, and by which appellants authorized and consented to the execution of the mortgage. The agreements were identical, except as to the description of the land, and each contained the following provisions:

''It is further understood and agreed by and between the parties hereto that in event the parties of the second part [appellants] exercise the privilege granted them in the option as aforesaid, and purchase from party of the first part [respondent] the above described property, or any part thereof, or in event they acquire title to said property or any part thereof, they will buy or acquire title to said property subject to said mortgage lien, and the conditions therein set forth, assuming and agreeing to pay the said loan. . . . .

''And it is further understood and agreed that in event parties of the second part exercise their option as aforesaid, the party of the first part will take and consider the assumption of the parties of the second part of said mortgage indebtedness, or so much thereof as may remain unpaid, interest included, at the time said option is exercised, as part payment on the purchase price as provided in said option.''

Appellants occupied the premises during the season of 1915 under a lease as provided for in the option, which lease expired March 1, 1916. Prior to the said date, respondent served notice on appellants that he would require possession of the land at the expiration of the lease. Appellants, however, continued in possession, and on May 13, 1916, notified respondent in writing that they elected to exercise the right to purchase granted them by the option. This notice contained the following:

"You are hereby notified that the undersigned, Andrew T. Lawrence and George H. Lawrence, have heretofore elected and do now elect to exercise a certain option given them in writing on or about the 17th day of May, 1915, by you the said John Shull as first party, and the said Andrew T. Lawrence and George H. Lawrence as second parties, to purchase from you, the said John Shull, the following described lands, and the whole thereof, to-wit: (Here follows description of the land).

"And said Andrew T. Lawrence and George H. Lawrence hereby further notify you that they are ready and willing to meet all of the terms and conditions of said option contract, that is to say, they are ready to execute all contracts and agreements required on their part by said option contract.

"And you are further notified that said undersigned parties, and each of them, having heretofore, to-wit, on or about the 7th day of September, 1915, paid, or caused to be paid to you the said John Shull upon the purchase price of said first above described premises, the same being the premises commonly known as the Andrew T. Lawrence farm, the sum of $9900, by reason of a certain loan made upon said premises by the Devereaux Mortgage Company, a corporation; and also paying, or causing to be paid to you, the said John Shull upon the purchase price of said second above described premises, the same being the premises commonly known as the George T. Lawrence farm, the sum of $6600 by reason of a certain loan made upon the said second above described premises, the same being furnished by the said Devereaux Mortgage Company, aforesaid.

"Said contract, among other things, provides that in the event the parties of the second part (they being Andrew T. Lawrence and George H. Lawrence) exercise the privilege granted them in the option aforesaid (that is the option of May 17th, 1915) and purchase from party of the first part (that being the said John Shull) the above described property, or any part thereof, or in event they acquire title to said property or any part thereof, they will buy or acquire title to said property subject to said mortgage lien and the

conditions therein set forth, assuming and agreeing to pay the said loan, and aggregating the sum of $9900 on the first described premises and $6600 on the second tract, together with the interest due and to grow due thereon;

"And it is further understood and agreed, that in the event parties of the second part exercise their option as aforesaid, the party of the first part will take and consider the assumption of the parties of the second part of said mortgage indebtedness, or so much thereof as may remain unpaid, interest included, at the time said option is exercised, as part payment on the purchase price as provided in said option, etc.

"And that the said Andrew T. Lawrence and George H. Lawrence do hereby tender a full performance on our part of all of the additional terms, conditions and requirements on our part to be kept and performed, as expressed in said option contract of May 17th, 1915, and said supplemental agreements made and entered into by each of us severally on or about the 17th [7th] day of September, 1915, said last mentioned contracts being made in triplicate and entered into between you the said John Shull as party of the first part, and we the said Andrew T. Lawrence and George H. Lawrence as parties of the second part, and the Devereaux Mortgage Company as party of the third part, and we hereby request and demand from you deeds of conveyance to and for said premises in accordance with the terms and conditions of said option contract heretofore made, and further advise you that we have continued in possession of and are cultivating said lands, and that we shall continue and remain in possession of said lands, and the whole thereof, and to raise crops thereon and to enjoy the proceeds thereof, in accordance with the terms of said option contract; that all of said sums of $9900 and $6600 heretofore paid or caused to be paid by us on said option contract by said real estate loans, be first applied upon the first payment required to be made by us on said option contract, and that the remainder be applied upon the future payments for said premises as the same may mature.

"Dated at Shelley, Idaho, this, the 13th day of May, 1916."

After this notice was served upon respondent, a meeting was had between appellants and respondent, and their attorneys, at Idaho Falls, at which respondent tendered, or offered to tender, a deed of conveyance of the premises to appellants for the payment by them of one-fourth of the purchase price of the premises in cash, and further offered to satisfy the mortgage to the Devereaux Mortgage Company and accept mortgages from appellants for the remaining three-fourths of the purchase price, or to permit the Devereaux Mortgage to remain upon the premises and accept a second mortgage from appellants for the remainder of the purchase price after deducting the amount represented by the Devereaux mortgage. Appellants declined to make any such cash payment.

The appeal is from the judgment awarding possession of the premises to Shull as owner.

The court found as a fact that respondent, on or about the date of expiration of the option contract, made and executed warranty deeds conveying said lands to appellants, and offered to deliver the deeds in accordance with the terms of the option contract as modified at the time the loan was procured from the Devereaux Mortgage Company.

There can be no doubt from the evidence produced at the trial that respondent tendered deeds only on condition that one-fourth of the purchase price be paid in cash.

It appears that the agreement of Sept. 7th, 1915, was prepared by the Devereaux Mortgage Company and was presented to appellants for their signature by D. E. Rathbun, attorney for respondent, and was executed by appellants in the form in which it was presented to them. Appellants earnestly contend that if respondent drew this contract, or if drawn by another, presented it to appellants with the intention of having appellants understand that by its terms the money which he was to receive from the Devereaux Mortgage Company was to be applied as first payment of the purchase price of the land in question, and it is capable of such construction, appellants are entitled to have it so con-

strued, even though respondent understood that the language he employed should mean that the money was not to be applied on appellants' first payment. Many authorities are cited in support of this contention.

It is to be noted, however, that the agreement of Sept. 7, 1915, contains no provision that the money which respondent was to receive from the Devereaux Mortgage Company was to be considered a payment upon the option contract. The agreement is to the effect that the assumption of the mortgage by appellants should be considered as payment upon the option.

The rule of construction contended for should be applied by the courts only when other means fail to demonstrate the sense in which the promisor employs the language used in the contract. Before it becomes necessary to apply this rule of construction, it must be made to appear that the language of the contract or agreement in question is ambiguous, and also that it is impossible to determine, from the facts and circumstances surrounding its execution, whether the words employed were used by all parties to the contract to express a particular or specific intention.

It is not necessary to hold the language employed in the provision of the contract under discussion to be ambiguous. In order to raise an ambiguity it must be assumed that the parties intended to make provision in the contract itself for the application of the payment made by the assumption of the mortgage to one or another of the instalments of the purchase price. The contract by its terms makes no such provision. It is not necessary to its validity that such provision should be included. It goes no further than to provide that "the party of the first part will take and consider the assumption of the parties of the second part of said mortgage indebtedness . . . . as part payment on the purchase price as provided in said option." This does not state what part or instalment of the purchase price the assumption of the mortgage indebtedness was to become. That being true, it is a familiar principle that the debtor, or payor, may direct application of the payment at or prior to the time the pay-

ment is made.  (*Alexandria v. Patten,* 4 Cranch, 317 (U. S.),
2 L. ed. 633; *United States v. Kirkpatrick,* 9 Wheat. 720, 6
L. ed. 199; *Carson v. Cook County Liquor Co.,* 37 Okl. 12,
Ann. Cas. 1915B, 695, 130 Pac. 303, where a large number
of cases are collected; 21 R. C. L. 88; 30 Cyc. 1228.)   This
principle is applicable whether payment be made upon one
of two or more separate debts, or upon a single debt com-
posed of several items, or one to be paid in instalments.
(*Dey v. Anderson,* 39 N. J. L. 199; 21 R. C. L. 88; 30 Cyc.
1228.)  It is equally applicable whether payment be made in
money, commodities, services, notes or choses in action.
(*Born v. Union Elevator Co.* (Ind. App.), 118 N. E. 973;
*Ross v. Crane,* 74 Iowa, 375, 37 N. W. 959; *Taylor v. Foster,*
132 Mass. 30; *Carson v. Cook County Liquor Co., supra; Dey
v. Anderson, supra.*)

The respondent, when he demanded that the first payment
on the option should be made in cash, did not tender, or offer
to tender, the deeds in accordance with the terms and provi-
sions of the option.

The trial court further found as a fact that "the defend-
ants did not exercise their option and purchase said lands
or any part thereof, and did not assume or agree to pay the
mortgage indebtedness placed on said lands by the plaintiff
in favor of the said Devereaux Mortgage Company."   Also
that "the defendants failed to make or tender any payment
whatever as provided in the option contract."

With reference to these findings, it is sufficient to say that
appellants were not required to perform or to tender per-
formance in order to avoid forfeiture of the option.

"A formal tender by the purchaser is also unnecessary, and
an offer and readiness on his part to perform is sufficient
where the obligations are mutual and concurrent, and the
vendor refuses unconditionally to perform his part of the
contract."   (39 Cyc. 1562.)

The same principle would apply where the vendor offers to
perform only upon a condition which is repugnant to the
terms of the contract, as in this case.   (*Phelps v. Davenport,*
151 N. C. 22, 65 S. E. 459; *McHenry v. Mitchell,* 219 Pa. St.

297, 68 Atl. 729; *Scanlan v. Geddes,* 112 Mass. 15; *Comstock v. Lager,* 78 Mo. App. 390.)

The appellants in their cross-complaint alleged that they were ready, willing and able to do and perform all of the terms and conditions by them to be performed, which allegation was denied by respondent. The issue thus raised is material to the determination of the action. The court has failed to find upon this issue.

Upon filing of the complaint, the court issued a temporary injunction, restraining appellants from selling or disposing of any or all of the crop raised upon the land for the year 1916. Thereafter, the parties entered into a stipulation to the effect that when appellants had deposited with the clerk of the court the sum of $4,000, realized from the sale of the crops for the year 1916, the temporary injunction should be dissolved, and the money so deposited should be held by the clerk of the court and paid out as might be ordered and directed by the court in such manner as should be deemed to be equitable and fair to the parties to the action.

After the judgment, the court denied the application of appellants for delivery to them of the $4,000 deposited with the clerk pursuant to the stipulation, and an appeal has been taken from the order.

As the case must be remanded for further proceedings, the disposition of the $4,000 should be determined and adjudged with the other issues in the case.

The judgment is reversed, and the cause remanded to the trial court for further proceedings in accordance with the views herein expressed. The order denying application of appellants for the delivery to them of the $4,000 deposited with the clerk is also reversed. Costs awarded to appellants.

Morgan, C. J., and Budge, J., concur.